## TRANSATLANTIC SHIPPING CO. v. ST. PAUL FIRE & MARINE INS. CO.

(District Court, S. D. New York. March 3, 1924.)

1. **Customs and usages ⬤⟲17—No custom can cancel express phrase in written contract.**

    No custom can cancel or annul an express phrase in a written contract.

2. **Insurance ⬤⟲402—Poop, forecastle, and bridge space held structures built in frame of ship.**

    Poop, forecastle, and bridge space *held* to be structures built in frame of vessel, within insurance certificate, providing risks should not cover cargo, unless under main deck, or in structures built in frame of vessel.

3. **Insurance ⬤⟲402—Officers' quarters on bridge deck held not "structures built in frame of vessel."**

    Officers' quarters, consisting of houses fixed to bridge deck by angle plates and angle irons and set inboard at least six inches from side of

---

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ship, were not "structures built in frame of vessel," within insurance certificate covering only cargo stored under main deck or in structures built in frame of vessel.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Structure.]

4. Insurance ⚙️153—Custom to accept films only for stowage on deck or in officers' quarters did not bind insurer.

That it was custom of certain navigation company carrying films to accept them only for stowage on deck or in officers' quarters did not bind underwriters to accommodate terms of insurance certificate to such individual practice, so as to warrant recovery under certificate requiring stowage under deck.

In Admiralty. Libel by the Transatlantic Shipping Company against the St. Paul Fire & Marine Insurance Company. Libel dismissed.

Pierre M. Brown, of New York City, for libelant.
D. Roger Englar, of New York City, for respondent.

LEARNED HAND, District Judge. The point of law involved in this case is as follows: The insurance certificate, expressly providing that the risk shall not cover any cargo which is not stowed under deck, then proceeds to state what the phrase "under deck" means. It means under the main deck, or in a structure built in the frame of the vessel. The libelant first proceeded on the assumption that it could by a custom show that in respect of films this had never been observed, and that films were always stowed elsewhere than under the main deck or in a structure built in the frame of the vessel.

[1] When it came into court its position was that, if that custom was universal, the stipulation of the certificate should be disregarded. As a mere question of law, it is so universally held that no custom can cancel or annul an express phrase in a written contract that it hardly seemed worth while to take evidence on the point; but as at that time I thought that possibly the libelant might wish to have the point reviewed, I was willing to do so. However, on the evidence as actually presented, there was no such custom, for it appeared that these films were very frequently carried in the forecastle or the poop or the bridge space; never so carried, it is true, where there were other inflammable substances, but carried, none the less, where those spaces were suitable for the protection of cargo, as they frequently are.

[2] Therefore it becomes obvious that, even though the libelant's point of law were good, it would have to appear that the poop and the forecastle and the bridge space are not structures built in the frame of a vessel. All the witnesses who are qualified to speak were unanimous in their opinion that they were built in the frame of the vessel. The only surveyor who appeared, Mr. Haight, made it clear beyond any peradventure that the phrase so applied, because the frames of the vessel, or, as we say in wooden ships, the ribs, extend in one piece up to the top of the poop, or the forecastle, or the bridge deck, and the plates are fixed to these frames above, precisely as they are below, the main deck. In many cases these decks have actual hatches, and are as much closed off from access as the hold itself below the main deck.

⚙️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Thus there remained nothing of the libelant's case, even upon the assumption that the point of law was correct.

[3] Finally, if I may say so as a last straw, it was suggested that, if this were so, then the officers' quarters on the bridge deck were themselves a structure built in the frame of the vessel. However, that in turn was quickly disposed of, because it appeared that such quarters were houses, fixed to the bridge deck by angle plates and angle irons, and were always set inboard at least six inches from the side of the ship. This being true, it appeared that there was no ground whatever for the libelant's position. All that happened was that, having taken an insurance policy which required one kind of stowage, they failed to stow the goods as the policy read.

[4] There was still a third position, which I am not quite sure that I understood, but which, so far as I did understand it, was this: As it has been the custom of the Ocean Steam Navigation Company, which carried these films, to accept them only for stowage either on deck or in the officers' quarters, in some way the underwriters were bound to be aware of that practice. though it was not a universal custom, but was peculiar to that line. The duty rested on them, the libelant argued, to accommodate the terms of their certificate to this individual practice, and they were bound by it. I state that argument as well as I can. This very statement, it seems to me, carries its own refutation, for it surely would be a preposterous suggestion to say that an insurer could not legally interpose conditions on the risk which were contrary to the practices of the carrier that the insurer himself elects to employ. That would in fact limit the insurer to such protection as the carrier chose to give him, and he must insure in accordance with the carrier's conception of its own convenience. I wish to be impartial, but I cannot treat that position seriously. It is so obviously contrary to any principle of law that, if I have understood it correctly, it is not to be entertained for a moment.

For these reasons, the libel must be dismissed, and the respondent will have a bill of costs.